| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| FOR THE EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| JULIO AMADOR, et al., | No. 1:17-cv-00552-DAD-BAM |
| Plaintiffs, | |
| v. | ORDER APPROVING SETTLEMENT AGREEMENT AND DISMISSING CASE |
| CITY OF CERES, | (Doc. No. 26) |
| Defendant. | |

This matter is before the court on the parties' stipulation for approval of the settlement agreement. (Doc. No. 26.) For the reasons that follow, the court will approve the settlement agreement.

**BACKGROUND**

On April 19, 2017, plaintiffs commenced this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Doc. No. 1 ("Compl.").) In their complaint, plaintiffs allege that defendant violated the FLSA by omitting premium compensation items—such as cash in lieu of health benefits and lump sum holiday pay—from the regular rate of pay. (*Id.* at ¶ 22.) On March 16, 2018, the parties submitted their stipulation for approval of the settlement agreement. (Doc. No. 26.) On March 23, 2018, the court issued an order directing the parties to provide supplemental briefing addressing why the proposed settlement is a fair and

1

reasonable resolution of a bona fide dispute, and also directed the parties to provide briefing on the issue of attorneys' fees. (Doc. No. 27.) Plaintiffs provided supplemental briefing on April 12, 2018 (Doc. No. 28 ("Goyette Decl.")), and defendant provided briefing on April 13, 2018. (Doc. No. 29 ("Maddox Decl.").)

**LEGAL STANDARD**

Settlement of collective action claims brought under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id.*

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement, while recognizing that some of those factors do not apply because of the inherent

differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214-KJM-EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Almodova v. City & Cty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply), *recommendations adopted*, 2010 WL 1644971 (D. Haw. Apr. 20, 2010). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved in order to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

**DISCUSSION**

**A.      Bona Fide Disputes**

Under the decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), the payment of cash in lieu of health benefits ("CIL compensation") must be included in the calculation of the regular rate of pay for overtime payments under the FLSA. Here, there appears to be no dispute that defendant is liable for overtime payments under *Flores*. (*See* Maddox Decl.

3

at ¶ 4.) However, the parties do dispute the extent of defendant's liability. First, the parties dispute the proper multiplier to be applied when calculating unpaid overtime. Plaintiffs' counsel maintains that a 1.5 multiplier applies, while defendant's counsel argues that a 0.5 multiplier is proper. (*Id.*) *See Chavez v. City of Albuquerque*, 630 F.3d 1300, 1311 (10th Cir. 2011) (applying a 0.5 multiplier); *Flores v. City of San Gabriel*, No. LACV 12-4884 JGB (JCGx) (C.D. Cal. Nov. 5, 2018) (Doc. No. 128) (same). Second, the parties dispute the applicable statute of limitations. (Maddox Decl. at ¶ 4.) Under the FLSA, the statute of limitations is two years, which may be extended to three years if the violation is found to be willful. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135 (1988). Here, the parties dispute whether the FLSA violation at issue in this case was willful. Third, the parties dispute whether holiday pay should be included in the calculations of the regular rate. *See Seguin v. County of Tulare*, No. 1:16-cv-01262-DAD-SAB, 2018 WL 1919823, at *2 (E.D. Cal. Apr. 24, 2018). All of these issues impact the extent of defendant's FLSA liability in this case.

These disputes between the parties notwithstanding, the parties agree that the proposed settlement amount represents more than what plaintiffs could realistically expect to recover at trial. Defendant's calculations, which plaintiffs do not dispute (Goyette Decl. at ¶ 17), shows a potential liability of $26,866.38, including liquidated damages. (Maddox Decl. at ¶ 11.) By contrast, under the terms of the Settlement Agreement, plaintiffs will be awarded a total amount of $75,300.00, plus an additional amount of $51,566.38 to be paid to plaintiffs' counsel as attorneys' fees. (Doc. No. 26 at 7.) In essence, defendant concedes liability as to some portion of plaintiffs' claims, and has opted to settle for an amount well above its estimated liability in order to avoid the time and expense of further litigation and trial. (Maddox Decl. at ¶ 12.)

Because defendant is not contesting liability at this stage in the proceedings, it is questionable whether a bona fide dispute exists here. Nonetheless, that fact alone does not compel rejection of the settlement because the value of plaintiffs' claims has not been discounted as part of the settlement. Approval of the parties' proposed settlement agreement thus would not thwart the purposes of the FLSA. *See Wagner v. County of Inyo*, No. 1:17-cv-00969-DAD-JLT, 2018 WL 5099761, at *3 (E.D. Cal. Oct. 18, 2018); *McManus v. City of Ceres*, No. 1:17-cv-

00355-DAD-BAM, 2018 WL 4262126, at *3 (E.D. Cal. Sept. 6, 2018). The court therefore proceeds to consider the fairness and reasonableness of the proposed settlement.

**B.     The Proposed Settlement is Fair and Reasonable**

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224, at *3; *Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017). The court addresses each of these factors below.

1.     Plaintiffs' Range of Possible Recovery

Under the terms of the Settlement Agreement, defendant will pay plaintiffs a total sum of $75,300.00. (Doc. No. 26 at 7.) However, these amounts vary substantially as to each plaintiff because, as explained in plaintiffs' submissions, most of the damages suffered in this case accrued only to a sub-set of eight plaintiffs. (Goyette Decl. at ¶ 17.) By contrast, plaintiffs' counsel stated that several of the remaining plaintiffs "had little to no FLSA damages" due to offsets. (*Id.* at ¶ 19.) Despite this, each plaintiff will receive a minimum payment of $1,200.00 to account for both overtime pay and liquidated damages, with some plaintiffs receiving substantially more. (*See* Doc. No. 26 at 14–47.) Because plaintiffs will receive substantially more than they are likely to receive if this case were to proceed to trial, this factor weighs in favor of approving the Settlement Agreement.

2.     The Stage of the Proceedings and the Amount of Discovery Completed

The court is also required to evaluate the stage of the proceedings and the amount of discovery completed in order to ensure that "the parties carefully investigated the claims before

5

reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have sufficient information to make an informed decision regarding settlement. The Ninth Circuit's decision in *Flores* makes it likely that plaintiffs would prevail on some aspect of their claim. The parties have engaged in informal discovery, pursuant to which defendant produced voluminous payroll and time records relevant to this action. (Maddox Decl. at ¶ 5.) Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate settlement.

   3. <u>The Seriousness of the Litigation Risks Faced by the Parties</u>

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). With respect to plaintiffs, and as discussed above, many of the plaintiffs might receive little (if any) recovery if this case were to proceed to trial. (Goyette Decl. at ¶ 17.) While defendant believes that its damage calculations are correct under the law, it also recognizes that the matter is uncertain, and that plaintiffs' arguments may have merit. (Maddox Decl. at ¶ 12.) Moreover, defendant states that it is presently involved in three other lawsuits involving the same or similar allegations, and wishes to end its disputes with its employees. (*Id.*) Finally, defendant points out that because they are certainly liable under at least some of plaintiffs' theories of recovery, they would be required to pay attorneys' fees if the case proceeded to trial. (*Id.* at 11.) Forcing this case to proceed to trial would dramatically inflate that fee award. The court accordingly finds it likely that further prolonging this litigation would generate needless litigation expenses for both sides, and that both plaintiffs and defendant will likely benefit financially by settling this action now. Accordingly, consideration of this factor weighs in favor of approval of the parties' FLSA settlement.

/////

/////

####  4. The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are therefore hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case); *McKeen–Chaplin,* 2012 WL 6629608, at *5 (rejecting FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

Here, the release provision is limited to all "grievances, disputes or claims of every nature and kind, known or unknown, suspected or unsuspected, arising from or attributable to Plaintiffs' claims that the City violated the FLSA up to and including the Effective Date of this Agreement." (Doc. No. 26 at 8.) This release provision is nearly identical to those previously found appropriate in FLSA cases, and the court similarly finds here that this release provision is reasonable. *See McManus*, 2018 WL 4262126, at *5; *Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD-SKO, 2018 WL 1305713, at *5 (E.D. Cal. Mar. 13, 2018). Consideration of this factor therefore also weighs in favor of approval of the FLSA settlement.

####  5. The Experience and Views of Counsel and the Opinion of Participating Plaintiffs

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014). Here, plaintiffs' counsel, attorney Gary Goyette, has

over fifteen years' experience as an attorney, and specializes in actions under California wage laws and the FLSA. (Goyette Decl. at ¶ 3.) After detailing the awards to each plaintiff, attorney Goyette avers that the Settlement Agreement is a fair and reasonable resolution to plaintiffs' claims. (*Id.* at ¶ 21.) Similarly, defendant's counsel Jesse Maddox has over fifteen years' experience litigating labor and employment law matters in California. (Maddox Decl. at ¶ 3.) Based on his experience, attorney Maddox states that the settlement amount and the proposed attorneys' fees represent a fair and reasonable compromise. (*Id.* at ¶ 12.) In addition, all plaintiffs had an opportunity to review the terms of the Settlement Agreement, and all have accepted its terms. (Goyette Decl. at ¶ 19.) Accordingly, consideration of this factor weighs in favor of approval of the FLSA settlement.

      6.      The Possibility of Fraud or Collusion

Here, the court finds that there is a very low probability of fraud or collusion because the parties used payroll record data to calculate back overtime pay and liquidated damages, and provided all plaintiffs the opportunity to review their settlement amounts, the methodology used to calculate those amounts, and the attorneys' fees and costs. This approach, based on an objective analysis of plaintiffs' time records, "guards against the arbitrariness that might suggest collusion." *Selk*, 159 F. Supp. 3d at 1179.

In addition, there is nothing in the record before the court to suggesting plaintiffs' counsel "allowed the pursuit of their own self-interests . . . to infect the negotiation." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). As discussed below, the requested amounts for attorneys' fees and costs are not disproportionate to the settlement amount awarded to plaintiffs. This settlement therefore lacks any evidence of more "subtle signs" of collusion, such as when the plaintiff class receives no monetary distribution but counsel are "amply rewarded." *Id.* at 947.

Upon considering the totality of the circumstances, as reviewed above, the court finds that the proposed settlement is fair and reasonable.

/////

/////

**C.     Attorneys' Fees and Costs**

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has generally set a twenty-five percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage award is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD–Rental*, 779 F.3d at 955.

According to the terms of this settlement, plaintiffs' counsel will be paid $51,566.38 in attorneys' fees and costs, out of a total settlement sum of $126,866.38. (Doc. No. 26 at 8.) Attorneys' fees and costs represent roughly 41 percent of the maximum settlement amount, which is above the benchmark, and also slightly above comparable awards in other cases. *See*

*Beidleman*, 2018 WL 1305713, at *6 (approving attorneys' fees and costs award of $43,414.92, which represented thirty percent of the total settlement amount); *Goodwin v. Winn Mgmt. Grp.*, No. 1:15-cv-00606-DAD-EPG, 2018 WL 1036406, at *7 (E.D. Cal. Feb. 23, 2018) (approving attorneys' fees of $75,000 in a settlement of a class action and FLSA collective action, which was thirty percent of the total settlement amount); *Slezak*, 2017 WL 2688224, at *3 (approving attorneys' fees and costs award of $52,069 in a settlement of a FLSA collective action, which was thirty-one percent of the total settlement amount). *But see Selk*, 159 F. Supp. 3d at 1180 (approving attorneys' fees and costs award of $22,000 in a settlement of a FLSA collective action, which was forty-four percent of the total settlement amount).

The court turns to the lodestar amount in order to cross-check whether a 41 percent award of attorneys' fees is appropriate here. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)). The court typically applies a lodestar multiplier after multiplying a reasonable hourly rate by the number of hours worked. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts").

This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13–cv–00474–DAD–BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience,

and $720 per hour for attorney with twenty-one years of experience); *Gong–Chun v. Aetna Inc.*, No. 1:09–cv–01995–SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 839–40 (E.D. Cal. 2016) (concluding that appropriate rates were $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14–cv–00964–MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years of experience); *Rosales v. El Rancho Farms*, No. 1:09–cv–00707–AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years of experience); *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners).

Attorney Goyette's declaration states that he has expended over 400 hours litigating this action. (Goyette Decl. at ¶ 20.) Even applying an hourly rate of $250.00 per hour (which is at the low end of the rates discussed above), this would yield an award of attorneys' fees greater than $100,000.00, well in excess of what plaintiffs' counsel seeks here. Moreover, the court notes that although the requested fee award is above the Ninth Circuit's benchmark, the amount recovered for plaintiffs in this case appears to be high compared with defendants' anticipated liability at trial. The court therefore approves the award of $51,566.28 in attorneys' fees and costs.

## CONCLUSION

For the forgoing reasons:

1. The Settlement Agreement is approved, and the Stipulation and Order (Doc. No. 26) are hereby entered by the court;

/////

2. Neither party is entitled to attorneys' fees and costs except as expressly specified in the Settlement Agreement;

3. This action is dismissed with prejudice; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **February 25, 2019**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE